## THE STATE *v.* PAUL LARTIGUE et al.

A party bound upon his recognizance to appear at court and answer to the charge of subornation of perjury, or any other felony, cannot do so by attorney; and on his failing to appear, the recognizance should be declared forfeited, although his attorney may offer to plead for him.

The statute punishing the crimes of perjury and subornation of perjury, was passed during the Territorial Government of Louisiana, and punished the offence when committed, in the courts of the Territory. *Held:* That the statute is still in force, and applies to the offence when committed, in the courts of the State.

APPEAL from the First District Court of New Orleans, *Larue,* J. *Isaac Johnson,* Attorney General, for the State. *J. W. Frost,* for appellant. The judgment of the court was pronounced by

PRESTON, J. The defendant, *P. Lartigue,* was accused of subornation of perjury; and being arrested, gave bond, with *Jerome Tourné* and *J. B. Lartigue* as his sureties in the sum of $2000, conditioned that if he should appear before the First District Court of New Orleans, to answer to the complaint brought against him for subornation of perjury, and not depart thence without leave of the court, the recognizance should be void; otherwise remain in full force.

He was indicted for the offence, and ordered to appear before the court on the 22d of July, 1850, to be arraigned, and his trial was fixed for the same day. He failed to appear in person; and the district attorney, in pursuance of the act approved the 11th of March, 1837, caused judgment of forfeiture of his bond to be entered against him and his sureties.

His counsel subsequently moved to set aside the judgment, on the following grounds: 1st. Because *Lartigue* was present, by his counsel, when he was called to be arraigned on the indictment, and was ready, by his counsel, to plead to the same. 2d. Because the indictment found against him, does not charge him with the commission of any act forbidden and punishable as a crime by the statutes of the State; and that the bond does not set forth an offence known to the laws, and punishable by statute.

The motion was overruled, and a final judgment rendered against *Lartigue* and his sureties, from which they have appealed.

The object of an arraignment, we are informed by Coke, is, to take care that the accused do appear to be tried, and hold up his hand at the bar for the certainty of the person, and plead a sufficient plea to the indictment. Coke, Lit. 262, 263.

The accused is also allowed, then, to put himself on the country for trial, or to select any other legal mode of trial, or may plead guilty and ask the clemency of the court, which is sometimes of great avail.

In England, for misdemeanors, the accused has sometimes been allowed to plead by attorney; but never in felony. It is true, perjury and subornation of perjury are not felonies in England; but, as conviction and inability to pay the fine, in England, might subject the accused to an infamous punishment, we doubt, if the courts in England would dispense with arraignment, allow a plea by attorney, or trial in the absence of the accused, for the grave offence of perjury, or subornation of perjury.

In this country, the term *felony* has not a precise meaning: the forfeiture of lands and goods, which characterize it in England, being abolished. It denotes, here, a crime of great magnitude, and subject to an infamous punishment—death or imprisonment at hard labor in the penitentiary. We find no example in the United States, in which the arraignment and presence of a prisoner to plead and be tried, when accused of a grave crime subjecting him to an infamous punishment, has been dispensed with. In the case of the *Commonwealth of Virgina* v. *Thomas Lewis*, presented for unlawful gaming, the General Court decided, "that the defendant may appear and plead by his attorney, without making his personal appearance in court." Virginia Cases, 335. But the punishment was only a pecuniary penalty.

The arraignment is a step and stage in the prosecution, and has never been dispensed with in this State. A plea, without arraignment and the presence of the accused, has never been allowed. So that the universal usage and practice is adverse to the pretensions of the defendant. No case has been produced, in England or the United States, in which a different practice has prevailed, where the crime subjected the accused to capital or infamous punishment.

For the crime of perjury or subornation, the criminal is subject, in this State, to imprisonment in the penitentiary at hard labor for a term not less than five years. He is rendered incapable of giving testimony, and, by the Constitution and laws, is forever deprived of the right of suffrage or to hold office. If an attorney can plead not guilty for a person accused of this crime, he can plead guilty, and subject him to these terrible consequences. We can sanction no other than the universal practice and usage in the State, where a contrary practice might lead to such serious results to an individual in his absence.

He has the great, constitutional privilege of meeting his accusers and the witnesses against him face to face. The trial, too, is for the public example:

STATE
v.
LARTIGUE.

the solemnity and effect of which would be greatly impaired if it should take place in the absence of the accused.

He was to appear to receive punishment, too, if convicted; which has never been pronounced in the absence of the prisoner. Therefore the act of 1837 prescribes, that the forfeiture of the bond, for non-appearance, can be set aside by appearance, trial, conviction and punishment, or acquittal, at the same term.

The examining magistrate is directed to take bond for the appearance of the accused to answer the charge; which has always been understood to be a personal appearance. The terms of the bond, to appear and not depart until discharged, as universally taken, indicates the same thing. In case the accused fails to appear, the sureties are called, by the very terms of the statute of 1837, "to produce, instanter, in open court, the person of the defendant."

The practice of appearing personally to be arraigned, being present to plead, to challenge jurors, to be tried and punished, or discharged from the prosecution, personally, has been so universal, from our territorial organization to the present time, and in cases subject to infamous punishment, without exception, that we cannot sanction the introduction of a different practice.

The defendant was prosecuted under an act passed in 1805, for the punishment of perjury and subornation of perjury, committed in the courts of the territory. It is contended, that he could not be convicted of subornation of perjury committed in the courts of the State. And remarkable examples are cited of the strictness with which penal statutes against perjury have been construed in England: as, that the statute providing for the punishment of perjured witnesses, did not apply to a false oath in a chancery proceeding, or perjury on a criminal trial.

Examining our statute in this stringent manner, the word *courts*, in the act of 1805, for the punishment of perjury, would have expressed, so far as the character of the courts were concerned, all that the words *courts of the territory* expressed. And, in that point of view, the term *territory* was surplusage in the law. The terms *of the territory*, were therefore intended in the law to express the limits within which the courts were held which were to be protected by the statute against perjury. Now, the courts organized at that time in the territory, those subsequently organized under the Old Constitution, and those lastly organized under the New Constitution, were all embraced within, and extended to the same limits, and were, therefore, included in the general term *courts*, used in the act of 1805, punishing perjury.

Be this as it may, we have heretofore observed, that the melioration of our criminal jurisprudence had led to a more rational construction of our penal statutes than the strict construction which has been invoked on this occasion. And we have no hesitation in saying, that the courts of the territory, by the adoption of the Constitution of 1812, became the courts of the State; and the laws of the territory, the laws of the State; and their violation, the infraction of State laws. It has been so universally understood and acted upon by the legislative, executive and judicial departments of the government, and by the people, from 1812 until the present time; and, if necessary, we might say *communis error facit jus*.

But the words of the 4th section of the schedule of the Old Constitution, establishing a State government, are a conclusive answer to the argument of the defendant's counsel on the point under consideration. "That all laws now in force in this Territory, not inconsistent with this Constitution, shall continue and remain in full effect until repealed by the Legislature." So, by the adoption of the New Constitution, the courts created took the place of those

which were abolished. The laws protecting courts from crimes against public justice, as the stealing or altering records, perjury, and the like, were continued in force by the schedule of the Constitution without reënactment; and, it is universally understood, afford their protection to the present courts.

The judgment of the district court is therefore affirmed with costs.